IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **OZETTA HARDY**, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:10-CV-901-WKW |
| ) | |
| **IGT; et al.**, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs submit the following Consolidated Response to the Motions to Dismiss filed by Defendants:

Plaintiffs bring this action on behalf of themselves and on behalf of a proposed class consisting of all natural persons and other legal entities domiciled in the State of Alabama who played electronic-bingo machines at the Windcreek Casino, Tallapoosa Casino and Riverside Casino (the casinos) and who lost money playing those machines within six months preceding the commencement of this action.  These casinos are ostensibly owned by the Poarch Band of Creek Indians, a federally recognized Indian nation.  Defendants are manufacturers of electronic machines that purport to be video bingo terminals.  Plaintiff alleges however that these machines are simply slot machines that have no place in this state pursuant to both state and federal law.  Plaintiffs assert one claim, pursuant to Ala. Code 1975 § 8-1-150(a), which provides as follows:

> (a) All contracts founded in whole or in part on a gambling consideration are void.  Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action

>commenced within six months from the time of such payment or delivery.

Further, Ala. Code § 13A-12-27 (1975) declares the use of slot machines to be illegal in the State of Alabama. See, *Tyson v. Jones*, __ So.3d __ 2010 WL 2983188 (Ala. July 30, 2010.)  Under Plaintiff's theory of the case, all bets made by the Plaintiff and Plaintiff class during the class period and the losses of the class are due to be returned pursuant to § 8-1-150.

Defendants, upon information and belief, own and lease electronic bingo machines for use at the casinos named above.  Bingo is authorized on Indian reservations, however, no Class III games may be played without complying with certain portions of IGRA, the Indian Gambling Regulatory Act.  The casinos contain hundreds of electronic-gaming machines offering "electronic bingo."  The electronic-bingo machines are alleged to be slot machines and are not authorized by state law or federal law, and playing them therefore constitutes illegal gambling.  Thus, Plaintiffs and the proposed class are entitled to recover monies they lost playing these machines within six months preceding the commencement of this action, pursuant to § 8-1-150(a).

Plaintiffs allege that Defendants (hereinafter collectively, "the Gambling-Machine Defendants") owned or leased the electronic-bingo machines located at the casinos.  The Gambling-Machine Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief can be granted, and pursuant to Fed.R.Civ.P. 19 for failure to join the Poarch Creek Band of Creek Indians as a party.

The Gambling-Machine Defendants contend that the complaint does not state a claim upon which relief can be granted because it does not allege that there was a gambling contract between Plaintiffs and these Defendants, and otherwise argue that Plaintiff cannot prove with sufficient specificity any particular gaming loss by any particular Plaintiff or class member. Defendants argue that, as a matter of statutory interpretation, the right of action created by § 8-1-150(a) can only be maintained against a party to an illegal gambling contract. The problem with Defendants' interpretation of the statute is that the Alabama Supreme Court has rejected that proposition.

## **SEC. 8-1-150 CLAIMS**

The Alabama Supreme Court addressed liability under § 8-1-150(a) in *Motlow v. Johnson*, 39 So. 710 (Ala. 1905), a case frequently cited by the Gambling-Machine Defendants. In fact, these Defendants rely on the case in their motion. In *Motlow*, the plaintiff lost $750 on a wager. Several persons, including the defendant Motlow, pooled money to make up the $750 they bet the plaintiff on the wager, although the actual bet was placed for them by a third party, Collier. *Id.* at 710. Thus, the gambling contract was between the plaintiff and Collier, although Motlow received $400 of the plaintiff's money, the amount he had contributed to the winning bet. Under Defendants' theory, the plaintiff could not have recovered his money from Motlow, because Motlow was not a party to the gambling contract. But the Alabama Supreme Court held that "the plaintiff may recover against Motlow for the amount received by him of the winnings." *Id.* at 711.

Thus, a plaintiff proceeding under § 8-1-150(a) may recover the amount of his money received by any participant in the illegal gambling transaction, even though the

3

actual gambling contract was between the plaintiff and someone else. The Alabama Supreme Court's decision in *Motlow* is perfectly consistent with the second sentence of the statute, creating the cause of action, which provides that any person who has paid any money upon a wager may recover such money by a timely commenced action. This operative language does not limit the plaintiff's right of recovery to other parties to the gambling contract.

In *Motlow*, the Alabama Supreme Court observed, "The plaintiff and Collier alone made the bet on the election." 39 So. at 711. They were the only parties to the gambling contract. Yet, the plaintiff was allowed to recover the amount of his lost money which went to Motlow. Defendants' argument that Plaintiffs can only recover from parties to the gambling contract is not well taken.

More importantly, Sec. 8-1-150 provides in pertinent part, "Any person who has <u>paid</u> any money . . . lost upon any game or wager may recover such money . . . by an action commenced within six months <u>from the time of such payment</u> . . . ." (Emphasis added). By the specific terms of the statute, the six months begins to run when the money lost gambling was <u>paid</u>, not when a gambling contract was entered into. As noted above, Plaintiffs allege that they lost money playing the electronic-bingo machines within six months before this action was commenced. Defendants' argument is unsupported by the statute, and is without merit.

The Gambling-Machine Defendants further contend in support of their Motions to Dismiss that the Plaintiffs have failed to state a claim upon which relief may be granted because Plaintiffs have not alleged in any manner what specific losses can be attributed to specific events involving specific gambling machines. Stated differently, these

Defendants apparently contend that Plaintiffs must allege and prove that, for example, Plaintiff "A" went to a specific casino, gambled on a specific machine, on a specific date, and incurred a demonstrable loss on that specific occasion. This argument goes hand-in-hand with these Defendants' other contention, *i.e.*, that there is no joint and several liability imposed pursuant to § 8-1-150(a).

The Gambling-Machine Defendants' contentions notwithstanding, and while Plaintiffs concede that there is no joint and several liability imposed pursuant to the statute, it is impossible to conclude that the *Motlow* decision precluded an action against any party who was involved in the gambling transaction and who then received monies from the wager lost by the plaintiff. As discussed above, the *Motlow* Court held quite to the contrary. The actual bet placed in the *Motlow* case was placed by the plaintiff for himself, and by the defendant Collier with none of his own money, but for several other persons including the other named defendant, Spoon Motlow. *Motlow*, 39 So. at 710-11. The Alabama Supreme Court clearly stated that under such circumstances there would be no joint liability. *Id*. at 711. However, there was clearly no preclusion of an action against all parties who had an interest in the bet, and who received a portion of the money from the loser.[1]

The core of the Supreme Court's analysis is found in the following language. The Court stated:

> The plaintiff and Collier alone made the bet on the election. They, ostensibly, were the only persons who furnished the money, and deposited it in the hands of the stakeholder. It

---

[1] Collier, who placed the bet with the others' money, received a "commission" for doing so, which was deducted from the winnings. 39 So. at 710.

5

>     does not appear that the plaintiff knew that any one was
>     interested in the bet other than himself and Collier, nor does it
>     appear that Motlow knew with whom Collier would bet before
>     the bet was made. The theory, and the only theory, upon
>     which the plaintiff may recover, even under the statute, is that
>     the defendants have money belonging to the plaintiff which
>     they have no right to retain. The object of the statute avoiding
>     gaming contracts is, besides placing the seal of the law's
>     condemnation on such contracts, to put the parties <u>in statu quo</u>
>     as to <u>all money won or lost</u>. The only money lost by the
>     plaintiff that ever went into the defendant Motlow's hands - -
>     that can be said to have been paid by the plaintiff to Motlow as
>     money lost upon the wager - - was $400 paid to him by Collier.
>     Certainly if $400 was all the money won by Motlow, that was
>     the extent of his interest in the bet.

*Id*. at 711-12 (emphasis added).

It was decided that the purpose of the statute, placing the parties in <u>statu quo</u>, would not be served by impressing joint liability on all defendants. *Id*. However, the Supreme Court allowed recovery from Motlow, which logically means that the plaintiff in such a case may pursue an action against <u>all parties</u> to the bet who took money from the plaintiff in consequence of that bet. Any reliance by the Defendants on the decision in *Bryant v. Starkey*, 252 Ala. 21, 39 So.2d 291 (1949), is misplaced. The *Bryant* Court clearly noted in its analysis that the gambling defendant had received none of the monies at issue in that case. *Bryant*, 39 So.2d at 293-94.

There is no reasonable dispute in this case that the games operated by the Defendants at the Creek Indian casinos were illegal from the outset, much less during the limited time period covered by this class action. Several violations of law are alleged by the Plaintiffs in this case. For example, it is abundantly clear that the game manufacturers operated games that were certainly not "bingo". The machines are more properly referred to as "slot machines" and are not authorized under the IGRA. Further, the games offered

by the Defendants are illegal under Alabama law as well as under IGRA.  There is no reasonable argument that the machines at issue were not slot machines.

The normal arrangement between casinos, such as Windcreek, and game manufacturers or lessors such as the Defendants in this case contemplates that the game manufacturer receives a portion of the machines' "take" as compensation for the use of the machine by the casino.  In other words, the gaming defendants in this case received a set portion of "the bet" made by each class member in this case.  This agreement to "split the bet" would create a "joint interest" in the outcome of each bet and would certainly be covered by a lease contract between Cornerstone and each of the game manufacturers individually.  There thus would be no mystery as to how the proceeds of each bet was distributed.  The Defendants' argument that it is impossible to tell how much the class lost to each individual Defendant game manufacturer in this case is simply farcical, and should be rejected by this Court.

Likewise, Defendants' contentions that Plaintiffs' claims herein fail because it is impossible to prove that a specific person made a specific bet at a specific time and on a specific machine is without merit.  This argument takes the argument far afield from the issues raised by the Plaintiffs' complaint.  It is an attempt to escape by persuading this Court to follow a hypertechnical formulation of the degree of proof necessary at this point in the proceedings.  The Plaintiff need only allege and offer proof of a "plausible" claim for relief against the defendants. *Azar v. National City Bank*, __F.3d__ 2010 WL 2381049 (11th Cir. 210)(Citing *Ashcroft v. Icqbal*, 556 U.S. __, 129 S.Ct. 1239, 173 L.Ed.2d 868 (2009)).  This means only that the Plaintiff must produce proof that there are sufficient facts to conclude that the defendant is in fact guilty of the misconduct claimed. *Id.*  All factual

allegations in the complaint are to be taken as true, but the Court need not indulge the Plaintiffs' version of legal conclusions. *Id*. Factual allegations must be more than just "naked assertions" and establish more than sheer possibility. *Id*. The Plaintiff's factual allegations must be such as to raise a right to relief above the "speculative level." See, *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

The Court must make some allowance for what discovery may prove in this case. The plausibility standard requires only that the allegations of the Complaint raise a serious question that "discovery will reveal evidence" in support of the Plaintiffs' claims. See, *Bell Atlantic*, 550 U.S. at 556, 127 S.Ct. at 167, 167 L.Ed.2d 929 (2007). There need only be plausibility and a reasonable chance that discovery would produce evidence in support of the Plaintiffs' claims. Discovery in this case is likely to show that the Creek Indian nation may have waived its immunity by contract with the Defendants. Discovery may well likely show that the Creek Indian nation is not the acutal legal entity that owns and operates the casinos at issue. If in fact the Creek Indian nation has delegated its ownership or management interests to others who may not be tribal entities or members, there would be little argument that this case is properly joined.

The overarching issue in this case is the illegality of the Defendants' conduct in this case. There is little question that the Defendants were engaged in offering slot machines that were disguised as "bingo" terminals in the casinos at issue. There is absolutely no question that the Defendants were engaged in a for-profit business in the operations at the casinos. Likewise there is little question that the gaming Defendants in this case were

involved in the operations at the casinos only in the pursuit of profit, and made their profits on the backs of losing bettors. It is seemingly indisputable that the machine manufacturers in this case were paid out of the proceeds collected by their respective machines, and it is beyond the bounds of common sense to claim that there is no way to quantify what each manufacturer received in proceeds from the Creek Indian casinios. The Alabama Supreme Court in *Motlow* tacitly recognized that those who had a joint interest in the winnings of a bet could all be liable for recovery to an aggrieved loser. *Motlow*, 39 So. at 711.

The machine manufacturers in this case stand in much the same position as the "unknown" bettors in *Motlow*. The Plaintiff in *Motlow* made the bet at issue by placing money in the hands of a stakeholder along with a person named Collier. The Plaintiff did not know that Motlow existed at the time the bet was made and thus the Plaintiff could not have made a contract specifically with Motlow. The Plaintiff's only contact regarding the bet was with Collier, who represented not only Motlow but several others who were not parties to the suit. *Motlow*, 39 So. at 710-11. Despite these facts, the Alabama Supreme Court implicitly would have allowed recovery against Motlow of the $400.00 that was attributable to his portion of the proceeds won from the Plaintiff. *Id.* at 711.

All bets placed by the class members were placed on devices that were illegal under IGRA. All proceeds received by the defendants were necessarily derived from illegal activity. The Defendants obviously had a joint interest in the outcome of each bet given the general method of compensation to machine vendors, i.e., that the vendor would be paid a percentage of the gross take from each of its machines in use in the casino facility. The amount of gross take from each of the Defendants' machines would clearly be an item of record keeping that Defendants' would maintain and there is certainly no reason to think

that there would be any reason for confusion as to what each manufacturer was paid in consequence of the bets that were placed during the relevant six month period.

Plaintiffs claims are not speculative in any regard. Discovery is needed on the issues raised in the complaint, but the Defendants may not seriously contend that there is no possible proof a legitimate claim against the manufacturer Defendants in this case.

### **PREEMPTION, JOINDER, IGRA**

Further, Defendants claim that the Complaint should be dismissed for failure to state a claim upon two other specific grounds. First, Defendants contend that the complaint is subject to dismissal per their jurisdictional arguments based upon the Indian Gaming Regulatory Act (IGRA) and pursuant to the "necessary party" joinder strictures of Fed.R.Civ.P. 19. Essentially, Defendants argue that the Complaint is due to be dismissed because the IGRA preempts the field in the area of Indian Gaming, and because there is no private right of action allowed pursuant to the terms of the IGRA. Secondly, Defendants contend that because the Poarch Band of Creek Indians are a necessary and indispensable party to this action, the Complaint is due to be dismissed pursuant to Fed.R.Civ.P. 19.

This issue is before the Court on the Defendants' motions to dismiss pursuant to Rule 12(b)6, and not pursuant to Rule 56 Summary Judgment. This matter is very early in its progress, and the Defendants' motions are not entitled to the presumptions that attach under Rule 56. Defendants' motions are, at this point in the proceedings, premature and are due to be denied.

Defendants' claim at this point in the litigation between these parties that there is essentially no claim that can be brought by the Plaintiffs in this matter is simply over broad.

Defendants would appear to argue that there is an absence of any potential cause of action that may be brought against the defendants in the absence of the Poarch Band of Creek Indians as a party to this lawsuit. This simply is not the requirement of settled law. The question before this Court is one that is highly fact-specific, and one which is not easily resolved at this early stage of the litigation.

At least one federal district court has allowed a cause of action to proceed against an Indian nation directly involved in a real estate development on a state tax collection issue. This would at first blush seem to fly directly in the face of federal legislation which generally forbids states and local entities from imposing taxes on property located on Indian Lands. See, *Consolidated Tribes of the Chehalis*, 2010 WL 1406524 (WD WA April 2, 2010). In that litigation, the Consolidated Tribes sought declaratory relief seeking to enjoin the state from imposing a personalty tax on its property, a development known as the "Great Wolf Lodge." 2010 WL 1406524 at p.1. One of the primary defenses raised by the *Consolidated Tribes* was the defense of sovereign immunity. *Id.*

In *Consolidated Tribes*, the Federal District Court for the Western District of Washington was faced with a dispute between the local government and the Chehalis tribe. At issue was the tax local government levied on property that was admittedly located on grounds that were part of the reservation for the Chehalis Tribe. *Id*. at p. 2. One might believe that such a state of facts would in itself end the inquiry, however, the Court noted that there were additional factors to consider before the Court could conclude that the tax was not allowed under the strictures of *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). Pursuant to the law of *Bracker*, the district

court undertook an exhaustive analysis of the competing federal, state, and Indian interests at issue. 2010 WL 1406524 at 2-7.

The Court found several undisputed facts to be of importance in reaching its determination that the tax assessing authority was entitled to summary judgment, and that the tax was due to be paid by the entities involved in the development that was being pursued on the tribal land at issue. Those facts may be summarized as follows:

1.  The Chehalis Tribe and an entity known as Great Wolf Resorts, Inc. were both involved in the development of a hotel and water park located on tribal land. The Tribe and Great Wolf acted in concert to form an LLC that became known as CTGW whose purpose was to build and own a lodge/water park. 2010 WL 1406524 at 2.

2.  The Lodge itself was a huge facility that was privately financed, using no federal money in the process, to finance the $172 million dollar cost. *Id*.  In so doing, the Tribe guaranteed to be responsible for 51% of the cost of financing the project, and Great Wolf agreed to support the other 49%. *Id*.

3.  The Tribe leased tribal property to CTGW on which to locate the development, and the lease provided that during the term of the lease CTGW would own the land and all improvements in fee simple. *Id*.

4.  The Agreement forming the LLC known as CTGW made Great Wolf the "managing member" of that LLC, and gave Great Wolf the day to day authority to operate the lodge as its owner. *Id*.

5.  With regard to management of the Lodge, CTGW as the "owner" of the Lodge entered into a "Management Services Agreement" with a company known as Great Lakes Services, LLC to manage the Lodge. As a part of that agreement, CTGW agreed not to

involve itself in the day to day operations of the Lodge. *Id.* at 3.

6. Further, while the Lodge employed around 500 persons, only about 25 of those employees were actually members of the Tribe. *Id.* at 3.

7. The Western District court noted that the tax levied in this case was actually levied against CTGW, which was a Delaware Corporation, and thus was neither an Indian Tribe nor a tribal member. *Id*. at 4.

The District Court also noted that when the court is faced with the issue of state control over non-indians who are acting on Indian Lands, the court must engage in a particularized inquiry into nature of the state, federal and tribal interests at issue. The issue is framed as whether the state interests at issue, and the exercise of state authority, would in that specific context violate federal law. *Id*. at 5. Cf., *Yavapai Prescott Indian Tribe v. Scott*, 117 F.3d 1107, 1109 (9th Cir. 1997). Neither tribe, neither the Consolidated Tribes nor the Yavapai tribe, actually operated a gaming business at their locations, but the District Court implied that such a fact would weigh in favor of a preemption. *Id*. at 6. However, the District Court concluded that the factors before it weighed in favor of the state taxes being levied and collected. *Id*. at 8-9. As in *Consolidated Tribes*, discovery may well show that the Creek Indian nation does not own or operate the casinos at issue. That being the potential to be proved by discovery, this court should not dismiss this case at this point.

Plaintiff submits that this Court should allow this case to proceed. In the context of a motion to dismiss for failure to state a claim, the plaintiff need only prove a "plausible" claim for relief against the defendants. See, *Azar v. National City Bank*, __ F3d __ 2010

WL 2381049 (11th Cir. 2010)(Citing *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). This means only that the plaintiff need allege sufficient facts to believe that the defendants are in fact guilty of the misconduct alleged. *Id.* In resolving a motion to dismiss, the district court must take all allegations of the complaint as true.

Further, the 8th Circuit has recognized that IGRA incorporated all existing state gambling laws. Pursuant to its clear terms, IGRA made all existing anti-gambling restrictions applicable to Indian casinos. See, *U.S. v. Nebraska*, 135 F3rd. at 564 (Citing 18 U.S.C, §1166 (a)). In *Nebraska*, the U.S. attorney for the federal district was allowed to seek injunctive relief pursuant to the law of the state of Nebraska to enforce a closure order of the NIGC commissioner. In that case, one of the issues was that the Indian Nation was operating a class III (slot machine) operation in violation of IGRA. *Id* at 564-66.

The management of these casinos by a non-tribal entity should remove these disputes from the restrictions of IGRA. This state of facts should trigger the balancing test act set out in *Consolidated* and should result in a denial of the Defendants' Motion to Dismiss in entirety.

It is not impossible for a tribe to waive its immunity by contract with a non-tribal entity. However, the waiver must be clear and unequivocal. Also, to be effective, it appears the contract providing for waiver must be approved by the Bureau of Indian Affairs. *A.K. Management Co. v Santee Board of Mission Indians*, 789 F.2d 785, 789 (9th Cir. 1986).

The case of *Multimedia Games, Inc. v. WL Acquisition Corp.*, 214 F. Supp. 1131 (N.D. Okla. 2001) is also instructive on the issues raised by the Defendants. In this case,

Multimedia, who is a large supplier of gambling machines, sued for patent or copy right infringement alleging that a group of former employees had absconded with trade secret materials and sold it to a tribal entity. *Multimedia*, 214 F.Supp. at 1134. The court took due notice of the fact that the tribe retained its traditional sovereign immunity. *Id*. at 1134. However, that was not the end of the inquiry.

The ND Okla. went on to consider several issues, including whether the tribe or a tribal entity were indispensable parties to the suit. The court concluded that the action sounded in tort and therefore that there need be no joinder of the tribe or its subordinate entities because joint tortfeasors are only permissive parties. *Id*. at 1141-1142. Further, the court found that complete relief could be afforded without joining the Indians to the suit. Also, because the contracts at issue and the technology at issue were transferred to an arguably non-tribal entity, there was no reason to attach immunity to the defendants. *Id.*

As between the parties to this case, complete relief can be granted in this litigation by this court. The *Motlow* case, supra, makes it clear that Plaintiffs may only recover that portion of the bets that were received by the Gaming Machine Defendants. There is no reason to join the Creek Indian nation to grant that relief. Plaintiffs do not seek recovery of any monies from the Creek Indian nation but only from the non-tribal entities named as defendants in this case. The Creek Indian nation is only minimally involved in this matter and the machine defendants are liable for a distinct and provable portion of damages which can be clearly calculated and proven. Plaintiffs may prove that each named Defendant received clear and identifiable portions of the monies lost by the Plaintiff and Plaintiff Class. Thus, there is no reason to join the Creek Indian nation to this cause. The

named Defendants have no immunity from suit and cannot be allowed to cloak themselves in protections that were not intended for their benefit.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the court deny the motions to dismiss. The Defendants are not entitled to claim immunity and should be required to defend this suit and participate in discovery.

**RESPECTFULLY** submitted this 18th day of January, 2011.

/s/ Blaine C. Stevens
**BLAINE C. STEVENS  (STEVB0959)**


/s/ Michael G. Strickland
**MICHAEL G. STRICKLAND  (STRI3871)**


**OF COUNSEL:**
STRICKLAND & KENDALL, LLC
2740 Zelda Rd, Suite 500 (36106)
Post Office Box 99
Montgomery, AL 36101-0099
PH:   (334) 269-3230
FX:   (334) 269-3239
mgs@jurytrial.us
stevenslaw21@aol.com


**OF COUNSEL:**
Steven A. Martino, Esq.  (MARTS7433)
W. Lloyd Copeland, Esq.  (COPEW3831)
TAYLOR-MARTINO-ZARZAUR, P.C.
Post Office Box 894
Mobile, AL 36601
PH:   (251) 433-3131
FX:   (251) 405-5080
stevemartino@taylormartino.com
lloyd@taylormartino.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 18th day of January, 2011, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

Tabor Novak Jr.
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, AL 36102
tnovak@ball-ball.com
*Attorney for IGT*

William G. Somerville, III
Andrew P. Walsh
Baker, Donelson, Bearman,
  Caldwell & Berkowtiz, P.C.
420 North 20th Street
Suite 1600 Wachovia Tower
Birmingham, AL 35203
wsomerville@bakerdonelson.com
awalsh@bakerdonelson.com
*Attorneys for Bally Gaming, WMS Gaming*

J. Eric Getty
Louis Michael Calligas
Balch & Bingham, LLP
1901 6th Avenue North
Suite 1500
Birmingham, AL 35203
egetty@balch.com
*Attorney for Multimedia Games*

David R. Boyd
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101-0078
(334) 269-3132
(334) 269-3115
dboyd@balch.com
*Attorney for Multimedia Games*

Darrell W. Grimsley, Jr.
P.O. Box 130836
Birmingham, AL 35213
dwgrimsley@me.com
**Attorney for Eclipse Gaming Systems**

Joseph Wendell Carlisle
Mitchel Hampton Boles
Don B. Long, III
Robert Marcus Givhan
Johnston, Barton, Proctor & Rose, LLP
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, AL 35209
jwc@jbpp.com
mhb@johnstonbarton.com
dbl3@johnstonbarton.com
rmg@johnstonbarton.com
**Attorneys for Cadillac Jack, Inc.**

Maxwell H. Pulliam
Christian & Small, LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203
mhp@csattorneys.com
**Attorney for Rocket Gaming Systems, LLC**


                     /s/ Blaine C. Stevens
                     Of Counsel