IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OZETTA HARDY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 2:10-CV-901-WKW [WO] |
| | ) | |
| IGT, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

During the six months preceding the filing of the Complaint in this case on October 25, 2010, Plaintiff Ozetta Hardy and a purported class collectively bet and lost over $5,000,000 playing electronic bingo at three casinos owned by the Poarch Band of Creek Indians ("the Tribe").  However, the Tribe is not a Defendant in this suit.  Rather, Ms. Hardy brings suit against the Defendant manufacturers (collectively "the Manufacturers") that allegedly constructed, owned, and operated the electronic bingo machines at the Tribe's casinos.  (Doc. # 5 ("Am. Compl."), ¶¶ 2-13, 19.)   In her one count Amended Complaint, Ms. Hardy alleges that electronic bingo as played within the Tribe's casinos constitutes illegal gambling under Alabama and federal law, and the Manufacturers have no right to retain the class's illegal gambling losses under Alabama Code § 8-1-150(a).  (Am. Compl. ¶ 22, 25.)

Seven Manufacturers remain as Defendants: (1) IGT, Inc. ("IGT"); (2) Bally Gaming, Inc. ("Bally"); (3) WMS Gaming, Inc. ("WMS"); (4) Eclipse Gaming Systems, LLC ("Eclipse"); (5) Multimedia Games, Inc. ("MMG"); (6) Rocket Gaming Systems, LLC ("Rocket"); and (7) Cadillac Jack, Inc. ("Cadillac Jack"). Each Manufacturer moves to dismiss. (*See* Doc. #65 (IGT); Docs. # 63-64 (Bally); Docs. # 63-64 (WMS); Doc. # 66 (Eclipse, joining Bally's and WMS's motions); Docs. # 67-68 (MMG); Docs. # 69-70 (Rocket); Docs. # 80-81 (Cadillac Jack)).[1] Ms. Hardy filed a consolidated response (Doc. # 84), and six of the seven Manufacturers replied. (Docs. # 93-97.) Eclipse did not reply.

The Manufacturers' arguments for dismissal can be classified into three categories: (1) Ms. Hardy's Alabama state law claim is completely preempted by the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721; (2) Ms. Hardy fails to join the Tribe, a necessary and indispensable party to this litigation pursuant to Rule 19 of the Federal Rules of Civil Procedure; and (3) Ms. Hardy fails to plead facts sufficient to state a contractual claim against the Manufacturers under Alabama Code § 8-1-150(a). (*See generally* Docs. # 63-64, 66 (Motions to Dismiss of Bally, WMS, and Eclipse).)

---

[1] Given the numerous briefs filed in support of and in opposition to the motions to dismiss, the filings are cited herein by using the docket numbers assigned to the documents in the court's electronic filing system.

After careful consideration of the arguments of counsel, the law and the Amended Complaint's allegations, the motions to dismiss are due to be granted for failure to join an indispensable party.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332(d)(2). Personal jurisdiction and venue are not contested, and there are adequate allegations of both.

## II.  STANDARD OF REVIEW

Rule 19 of the Federal Rules of Civil Procedure delineates a two-part test for determining whether a party is indispensable. *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982). "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible." *Id.* Under sub-part (a), a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined if

(A)   in that person's absence, the court cannot accord complete relief among existing parties; or

(B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    (i)    as a practical matter impair or impede the person's ability to protect the interest; or

    (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  In analyzing whether a party should be joined if feasible, *i.e.*, whether a party is "necessary," "'pragmatic concerns, especially the effect on the parties and the litigation,' control."  *Challenge Homes, Inc.*, 669 F.2d at 669 (quoting *Smith v. State Farm Fire & Cas. Co.*, 633 F.2d 401, 405 (5th Cir. 1980)).[2]

If, after applying the factors of Rule 19(a), the court finds that the party "should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction), then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue."  *Id.*  The factors in Rule 19(b) are as follows:

    (1)    the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

    (2)    the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

    (3)    whether a judgment rendered in the person's absence would be adequate; and

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

4

(4)     whether the plaintiff would have an adequate remedy if the action
        were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

A party is labeled "indispensable" only if, after completing the analysis under Rule 19(a) and (b), the court finds that the party is necessary to the litigation, that the party cannot be joined to the litigation, and that the litigation cannot proceed without that party. *Challenge Homes, Inc.*, 669 F.2d at 669 n.3 ("[T]he term 'indispensable party' is merely a conclusion arrived at after completing the analysis in Rule 19."). The movant bears the burden of establishing that a party is necessary or indispensable under Rule 19. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011).

## III.  BACKGROUND

The relevant facts alleged in the Amended Complaint, which are taken as true for purposes of the motions, are as follows.  At all times material to this litigation, the Tribe operated three electronic bingo gaming facilities (collectively "the Tribe's Casinos") within the borders of Alabama: (1) the Tallapoosa Casino in Montgomery County; (2) the Riverside Casino in Elmore County; and (3) the Windcreek Casino in Escambia County.  (Am. Compl. ¶ 17.)  The Tribe provided real estate and the buildings for its Casinos.  (Am. Compl. ¶ 18.)  The Casinos contained hundreds of

electronic bingo gaming machines, played daily by hundreds of customers. (Am. Compl. ¶ 17.)

The Tribe's Casinos do not have gaming licenses from the state of Alabama, nor have they received approval for gaming through an Alabama Constitutional amendment. (Am. Compl. ¶ 17.) IGT and Bally are Nevada corporations; MMG and Eclipse are Texas corporations; Cadillac Jack is a Georgia corporation; and Rocket and WMS are Delaware corporations. (Am. Compl. ¶¶ 2-5, 7, 11-12.) Through an agreement with the Tribe, the Manufacturers owned, leased, provided, programmed or administered the electronic bingo machines in the Tribe Casinos. (Am. Compl. ¶¶ 18-19.) In addition, the Manufacturers provided software and servers required to operate the electronic bingo machines. (Am. Compl. ¶¶ 18-19.) Specifically, the Manufacturers and the Tribe had an "arrangement" wherein the Manufacturers placed the electronic bingo machines in the Tribe Casinos, and then remotely programmed, serviced and operated the machines through the Manufacturers' software and servers. (Am. Compl. ¶ 18.)

Ms. Hardy, an Alabama citizen, frequently played electronic bingo at the Tribe's Casinos in the six months preceding commencement of this litigation, and lost more money than she won during that period. (Am. Compl. ¶¶ 23-24.) The Manufacturers and the Tribe collected the money Ms. Hardy and the putative class

6

lost playing electronic bingo during the six-month period preceding October 25, 2010, the date Ms. Hardy filed her original Complaint.  (Am. Compl. ¶ 18; Doc. # 1.)  The Tribe paid the Manufacturers a percentage of the electronic bingo gaming losses incurred by Ms. Hardy and the putative class.  (Am. Compl. ¶ 18.)

Ms. Hardy draws several legal conclusions alleging that the Manufacturers are not authorized to retain the moneys she and the putative class lost playing electronic bingo at the Tribe's Casinos. (Am. Compl. ¶ 25, 36.)  First, she alleges that the Manufacturers used the electronic bingo machines to engage in gambling contracts between themselves and the customers of the Tribe's Casinos.  (Am. Compl. ¶¶ 18-20.) Second, because the Manufacturers are not authorized to operate electronic bingo machines under either an Alabama constitutional amendment or Alabama gaming license, she concludes that the electronic bingo machines in operation at the Tribe's Casinos are illegal gambling devices under Alabama Code § 13A-12-20(5) and § 13A-12-27.  (Am. Compl. ¶¶ 17, 19, 21.)  Further, she concludes that the Manufacturers' electronic bingo machines are illegal slot machines under Alabama Code § 13A-12-20(10).  (Am. Compl. ¶ 21.)  Third, she alleges that the electronic bingo machines at the Tribe's Casinos violate the IGRA, because they are not bingo games authorized by the state of Alabama and constitute illegal Class III gaming under the IGRA.  (Am. Compl. ¶ 22.)  Fourth, she alleges that even if the Tribe is authorized to operate the

electronic bingo machines pursuant to the IGRA, the Manufacturers are not and, thus, they are in violation of the aforementioned Alabama criminal gambling statutes. (Am. Compl. ¶ 22.) Accordingly, Ms. Hardy claims that she and the putative class "are entitled to recover from the Defendants all monies they lost playing the electronic-bingo machines within the six months preceding the commencement of this action," pursuant to Alabama Code § 8-1-150(a). (Am. Compl. ¶¶ 25, 36.) She also requests a jury trial. (Am. Compl. 1.)

Finally, the Amended Complaint contains class allegations. (Am. Compl. ¶¶ 26-33.) Ms. Hardy seeks class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of:

> [a]ll natural persons residing in the United States of America who played electronic-bingo machines at the Po[a]rch Band of Creek Indian Casinos in the State of Alabama and who lost money playing said electronic-bingo machines within six months preceding the commencement of this action.

(Am. Compl. ¶ 26.)

## IV.  DISCUSSION

Alabama has had in place for more than 150 years a statute prohibiting the enforcement of a contract giving rise to a gambling debt. *See* Ala. Code § 8-1-150. Section 8-1-150(a), which is titled, "Contracts founded upon gambling consideration void; recovery of money paid or things of value delivered," provides:

> All contracts founded in whole or in part on a gambling consideration are
> void.  Any person who has paid any money or delivered any thing of
> value lost upon any game or wager may recover such money, thing, or
> its value by an action commenced within six months from the time of
> such payment or delivery.

*Id.*

This suit by an electronic bingo playing plaintiff seeking to recoup her losses under § 8-1-150(a) is one of four such suits pending in this court.  See *Adell v. Macon Cnty. Greyhound Park*, No. 3:10-CV-122-WKW (M.D. Ala. filed Feb. 16, 2010); *Bussey v. Macon Cnty. Greyhound Park*, No. 3:10-CV-191-WKW (M.D. Ala. filed Mar. 4, 2010); *Adams v. Macon Cnty. Greyhound Park*, No. 3:11-CV-125 (M.D. Ala. removed Feb. 22, 2011).  In *Adell* and *Bussey*, the plaintiffs brought § 8-1-150(a) claims against *both* the casino owner, the Macon County Greyhound Park, and the manufacturers of the electronic bingo machines located therein.  In orders entered on March 31, 2011, the court denied the defendants' motions to dismiss the plaintiffs' § 8-1-150(a) claims.  *Adell*, 2011 WL 1214741, at *19-22; *Bussey*, 2011 WL 1216296, at *8-12.  In fact, Bally, IGT, Multimedia, and Cadillac Jack are defendants in *Adell* and *Bussey*, and the court rejected similar joint and several liability, failure to state a claim, and failure to allege a contract arguments that the Manufacturers raise in this case. (*Compare* Doc. # 65, Ex. 1, at 6-7; Doc. # 68, at 2-7; Doc. # 70, at 12-14; Doc. # 81, 6-16), *with Adell*, 2011 WL 1214741, at *19-22, and *Bussey*, 2011 1216296, at

9

*8-12. Because the Manufacturers persuasively argue for dismissal on other grounds, the court need not address those arguments further.

This case presents two unique wrinkles that were not at issue in *Adell* and *Bussey*. First, Ms. Hardy did not sue the owner of the casinos, the Tribe, presumably due to its sovereign immunity. *See, e.g.*, *Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1242 (11th Cir. 1999). Second, Ms. Hardy's claims proceed not just under Alabama contract and criminal law, but also under the IGRA applicable to gaming conducted on Indian lands. Accordingly, the Manufacturers move to dismiss Ms. Hardy's Amended Complaint on additional grounds not considered in *Adell* or *Bussey*. The Manufacturers' additional arguments for dismissal are that:  (1) Ms. Hardy lacks standing to bring suit under the IGRA; (*see, e.g.*, Doc. # 81, at 18); (2) the IGRA preempts her state law contract claim (*see, e.g.*, Doc. # 64, at 17); and (3) the Tribe is a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure (*see, e.g.*, Doc. # 68, at 8).[3]  Ms. Hardy opposes dismissal on these grounds. Because the Manufacturers' necessary and indispensable party arguments are persuasive, the motions to dismiss are due to be granted under Rule 12(b)(7).

---

[3] Though the Manufacturers filed five separate briefs in support of their individual motions, they make substantially similar arguments in favor of dismissal. The court attributes any argument made by an individual Defendant to the other Manufacturers.

**A.**    **The Tribe is a Necessary Party**

The Manufacturers contend that the Tribe is a necessary party because the court cannot accord complete relief in its absence.  Further, the Manufacturers argue that disposing of this action in the absence of the Tribe would practically impair a variety of the Tribe's interests.  Ms. Hardy responds that the Tribe is a permissive party and that the court can grant complete relief in the absence of the Tribe.  (Doc. # 84, at 14-15.)  The Manufacturers have the better arguments.

Under Rule 19(a)(1)(B)(i), a party is necessary if disposing of the action in the non-party's absence may as a practical matter impair or impede the person's ability to protect his or her interest relating to the subject of the suit.  The Tribe's interest relating to the subject of this contract suit is substantial.  The Tribe's protectible interests arise from its contracts with Ms. Hardy and the proposed plaintiff class, *see Macon Cnty. Greyhound Park, Inc. v. Knowles*, 39 So. 3d 100, 110 (Ala. 2009) (casino-style wagering is at minimum a contract between the casino and its patrons), its contracts with the Manufacturers, and its right to self-regulation of gaming under the IGRA.  *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are [both necessary and] indispensable.") (citing

11

*Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885 (5th Cir. 1968); *Tucker v. Nat'l Linen Serv. Corp.*, 200 F.2d 858 (5th Cir. 1953); *Keegan v. Humble Oil & Refining Co.*, 155 F.2d 971 (5th Cir. 1946)); 25 U.S.C. § 2710(b) (detailing Indian and Federal Regulation of Class II gaming).

Necessary to Ms. Hardy's state law cause of action is a determination that the electronic bingo played on the Tribe's real estate and in its Casinos violates Alabama law and/or federal law. (Am. Compl. ¶¶ 18, 21-22.) One struggles to envision a more severe practical impediment to the Tribe's interests in its Casinos and related business arrangements. *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002) (holding that an Indian tribe had a legally protectible interest where the court was asked to determine whether the tribe's gaming violated state law and the IGRA, regardless if the games actually did violate state law). Whether the Tribe's gaming violates state or federal law does not obviate the Tribe's necessity to be heard regarding its contractual interests in this suit. *See Am. Greyhound Racing*, 305 F.3d at 1024 ("It is the party's *claim* of a protectible interest that makes its presence necessary."). Were this action to proceed in the absence of the Tribe, the validity and viability of the Tribe's contracts with the Manufacturers would be impeded (Am. Compl. ¶¶ 18-19), the enforceability of gambling contracts between gamblers and the Tribe would be called into question, and the Tribe's interests in self-regulation of its

gaming operations under the IGRA would be impaired. *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) (affirming the fundamental principle that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract"); *Doty v. St. Mary Parish Land Co.*, 598 F.2d 885, 887 (5th Cir. 1979) (judgment rendered in a lessee's absence that would reduce the value of its lease and inject an element of uncertainty into its business transactions constitutes a practical impediment to its ability to protect its interests).

Despite Ms. Hardy's argument to the contrary, *Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F. Supp. 2d 1131, 1142 (N.D. Okla. 2001), does not support her position that the Tribe is a permissive party.  (Doc. # 84, at 14-15.) Because that case sounded in tort, the district court found that the non-party tribal entity was merely a permissive party. *Multimedia Games*, 214 F. Supp. 2d at 1142-43; *see also* 7 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure, § 1623, at 361 (3d ed. 2001) ("Under generally accepted principles of tort law, the liability of joint tortfeasors is both joint and several. . . . Rule 19 does not alter the long standing practice of not requiring the addition of joint tortfeasors.  Thus, plaintiff may sue one or more of them without joining the others.").  However, the tort-based reasoning of *Multimedia Games* does not apply to this action seeking

13

rescission of a contract, where all the parties to the contract must be joined. *See Lomayaktewa*, 520 F.2d at 1325; *see also* 7 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure, § 1613, at 200-203 (3d ed. 2001) ("In cases seeking . . . rescission . . . or otherwise challenging the validity of a contract, all parties to the contract probably will have a substantial interest in the outcome of the litigation and their joinder will be required."). Because the Tribe is a necessary party under Rule 19(a), the court now turns to the indispensability analysis under Rule 19(b).

## B.     **The Tribe is an Indispensable Party**

It is undisputed that the Tribe is a federally recognized Indian tribe that enjoys sovereign immunity and therefore cannot be joined. *See Greemanville Water Sys. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1206-1210 (11th Cir. 2009) (discussing the Tribe's sovereign immunity); (Doc. # 84, at 10-16 (no argument that the Tribe lacks sovereign immunity in this case).). Because the Tribe is a necessary party incapable of joinder, "the court must proceed to Rule 19(b) and consider whether in 'equity and good conscience,' the suit should proceed without the necessary party*." Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999) (quoting Fed. R. Civ. P. 19(b)).

14

The Manufacturers argue that the Rule 19(b) factors weigh in favor of dismissal. (*See, e.g.*, Doc. # 81, at 29-33.) Ms. Hardy argues that the Tribe is not indispensable because "Plaintiffs do not seek recovery of any monies from the [Tribe] but only from the non-tribal entities named as defendants in this case." (Doc. # 84, at 15.) Upon review of the Rule 19(b) factors, the equities favor dismissal of Ms. Hardy's action in the absence of the Tribe.

First, for the same reasons that the Tribe is a necessary party under Rule 19(a)(1)(B)(i), rendering a judgment in this case would severely prejudice the Tribe under Rule 19(b)(1). *See supra* Part V.A; *Lomayaktewa*, 520 F.2d at1325 ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are *indispensable*.") (emphasis added); *Enter. Mngmt. Consultants, Inc. v. United States*, 883 F.2d 890, 894 n.4 (10th Cir. 1989) (The prejudice test under Rule 19(b) is essentially the same as the practical impediment of an interest test under Rule 19(a).).

Based on the sound reasoning of *Lomayaktewa*, the Rule 19(b) analysis could end here, but the court continues by addressing each Rule 19(b) factor on the merits. As a real and practical matter, the Tribe could be severely prejudiced by any judgment in this case. *See supra* Part V.A. Such a judgment could call into question the legality

of the Tribe's electronic bingo operations in its Casinos, call into question the alleged gambling contracts entered into between Plaintiffs, the Tribe, and/or the Manufacturers, call into question the viability of the alleged business arrangements between the Tribe and the Manufacturers, and infringe on the Tribe's right to self-regulate gaming on its lands under the IGRA.

Second, the prejudice to the Tribe could not be sufficiently lessened by shaping the relief, nor would a judgment in its absence be adequate.[4]  Though the court could shape Ms. Hardy's requested remedy by directing disgorgement of only the actual losses retained by each individual Manufacturer,[5] such shaping would not mitigate the judgment's practical, prejudicial effects on the Tribe.  Narrowing the scope of Ms. Hardy's recovery to just the parties would not alter the determination that the Tribe's gaming contracts with its patrons are void under Alabama law, and its electronic bingo operations are illegal under Alabama law or federal law, or both.  *See Am. Greyhound*

---

[4] Like the Eleventh Circuit, the court considers the Rule 19(b)(2) and (3) factors in tandem.  *Lakers*, 182 F.3d at 849; *Tick v. Cohen*, 787 F.2d 1490, 1495 (11th Cir. 1986).

[5] Despite Ms. Hardy's pleading that she seeks recovery of "all monies [she] lost playing the electronic-bingo machines," in the event of a favorable verdict, the court could limit her remedy to her respective actual loss from each Defendant.  *Motlow v. Johnson*, 39 So. 710, 711 (1905); (*Compare* Doc. # 5 ¶ 36 (Ms. Hardy alleges that the class and she are "entitled to recover from the Defendants *all monies* they lost playing the electronic[] bingo machines within six months preceding the commencement of this action.") (emphasis added), *with* Doc. # 84, at 15 ("Plaintiffs do not seek recovery of any monies from the [Tribe] but only from the non-tribal entities named as defendants in this case.").)  However, such a limitation would do nothing to lessen the practical prejudice to the Tribe and its interests.

*Racing*, 305 F.3d at 1025 (proposed shaping of relief held insufficient where it would not "protect the tribes from other potential effects of the declaration that the gaming conducted by the tribes pursuant to their compacts is illegal [under state law and the IGRA]); *Lomayaktewa*, 520 F.2d at 1325; *see also Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 480 (7th Cir. 1996) (holding that there was no way to shape relief to reduce prejudice in a *qui tam* action seeking recession of contracts between Indians and non-Indian merchants because "[t]here is no middle ground – either the transactions violate statutory requirements and are void, requiring payment of all value paid by the tribes, or they comply with the law and are valid") (internal citations omitted).  Nor has Ms. Hardy proposed any further protective provision or other measure to lessen the prejudice on the Tribe.

Third, a judgment in the absence of the Tribe would be inadequate because it could not order the Tribe to return to Mrs. Hardy the portion of her gambling losses it retained.  *Motlow v. Johnson*, 39 So. 710, 711 (1905) (denying the remedy of joint and several liability on a wager because "[t]he object of the statute of avoiding gaming contracts is, besides placing the seal of the law's condemnation on such contracts, to put the parties in statu quo as to all money won or lost")  Thus, in the absence of the Tribe, she likely would not be returned to her pre-gambling contract status quo position.  *Id.*

Fourth and finally, the Manufacturers concede that there is no adequate remedy for Ms. Hardy and the putative class if the court dismisses her action.[6]  (*See* Doc. # 64, at 10; Doc. # 68, at 17; Doc. # 81, at 32-33.)  However, as they convincingly argue, the absence of an alternate forum is a natural consequence of the Tribe's sovereign immunity that does not weigh in Ms. Hardy's favor.  *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986) (recognizing the problem of dismissing an action where there is no alternative forum for the plaintiff, but finding that "the dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent"); *see also Hall*, 100 F.3d at 480 ("A plaintiff's inability to seek relief . . . does not automatically preclude dismissal, particularly where that inability results from a tribe's exercise of its right to sovereign immunity."); *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991) ("Courts have recognized that a plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity.").  Weighing the equities, the prejudice to the Tribe's interests of allowing this suit to go forward in its absence far outweighs the prejudice to Ms. Hardy from her lack of an adequate remedy upon dismissal of this action.

---

[6] Though not raised by the Manufacturers, it is possible that Ms. Hardy could seek relief in tribal courts.  *See, e.g.*, *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1271 (11th Cir. 2011).  However, the existence of another potential forum plays no role in the Rule 19(b) analysis.

Ultimately, Ms. Hardy's interest in a forum to challenge gaming contracts she *voluntarily* entered into *in the Tribe's Casinos* must bow to society's interest in the Tribe's sovereign immunity.  *See Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 510 (1991) (detailing the Supreme Court's and Congress's long-established recognition of the doctrine of Indian tribal sovereign immunity and Congress's approval of the doctrine in promoting the goals of Indian self-government, self-sufficiency, and economic development).

The court finds that Ms. Hardy's claim is due to be dismissed because the Tribe is both a necessary and indispensable party.  Because of the Tribe's sovereign immunity and the nature of its interests in this case, the court further finds that even had Ms. Hardy requested leave to amend her complaint, amendment would likely be futile.  Therefore, the court need not address the Manufacturers' arguments that Ms. Hardy's state law contract claim is preempted by the IGRA and operation of federal law.

## VI.  CONCLUSION

Accordingly, it is ORDERED that the Rule 12(b)(7) motions to dismiss filed by Defendants Bally Gaming, Inc. (Doc. # 63), WMS Gaming, Inc. (Doc. # 63), Eclipse Gaming Systems, LLC (Docs. # 63, 66), IGT (Doc. # 65), Multimedia Games,

Inc. (Doc. # 67), Rocket Gaming Systems, LLC (Doc. # 69), and Cadillac Jack, Inc.

(Doc. # 80) are GRANTED.  A separate judgment will be entered.

     DONE this 15th day of August, 2011.

       /s/ W.  Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
